[Crim. Nos. 6253, 6254. Second Dist., Div. Two. Oct. 21, 1959.]

THE PEOPLE, Respondent, v. HENRY J. CARUSO et al., Appellants.

[Two Cases.]

Blase A. Bonpane, Robert E. Ford, Robert M. Maslow, Joseph A. Ball, Roger J. Pryor, Pauline Day Bakst, Spencer E. Van Dyke, Graham A. Ritchie, Cannon & Callister, David H,

Cannon, Reed E. Callister, Jack B. Tenney and Gordon B. Friesen for Appellants.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

HERNDON, J.—These are appeals from judgments of conviction on pleas of guilty entered by the appellants on October 1, 1957. At various times thereafter the appellants Henry J. Caruso, Sidney Schraier, Harold Andrews, Robert Stratford, Ladimir Macura and James Cauthen, moved to withdraw their pleas of guilty and substitute therefor pleas of not guilty. Appellants here contend that the trial court abused its discretion in denying their respective motions.

The appellants also purport to appeal from the orders denying the motions to change the plea, from the orders granting probation, and in one instance, [Andrews] from the sentence. ██ An order denying a motion to withdraw a plea of guilty and substitute a plea of not guilty is not appealable (*People v. Francis,* 42 Cal.2d 335, 336 [267 P.2d 8] ; *People v. Singh,* 156 Cal.App.2d 363, 365 [319 P.2d 697]) ; and no appeal lies from the sentence. (*People v. Gallardo,* 41 Cal.2d 57, 60 [257 P.2d 29] ; *People v. Yates,* 165 Cal.App.2d 489 [332 P.2d 314].) By the express terms of Penal Code, section 1237, an order granting probation is deemed to be a final judgment for purposes of appeal. However, only appellant Stratford raises any objection to the terms of probation. Hence, with this one noted exception, we need not here discuss the propriety of the orders granting probation. On these appeals from the judgments of conviction we may review the orders denying the motions to withdraw the pleas of guilty (*People v. Alexander,* 130 Cal.App.2d 529, 532 [279 P.2d 128]; *People v. Murphy,* 62 Cal.App. 709, 710 [217 P. 810] ; see 4 Cal.Jur.2d 402, § 543.)

Until 1957 appellant Henry J. Caruso was a successful automobile dealer in Southern California. He was the prime mover in establishing several retail automobile sales organizations which used his name extensively in their advertising programs. The other appellants were employees in the Caruso sales organizations. On April 25, 1957, in an indictment comprising 19 counts returned by the Grand Jury of Los Angeles County, appellants Henry J. Caruso, Cauthen, Macura, Schraier, Andrews, and six other defendants were charged with one count of criminal conspiracy to cheat and defraud (Pen. Code, § 182, subd. 4.) Caruso was also charged with

various of the other defendants with eight counts of forgery (Pen. Code, § 470) and 10 counts of grand theft (Pen. Code, § 487, subd. 1.) All defendants under this indictment were arraigned on May 6, 1957, and on June 10, 1957, each defendant moved to have the indictment set aside pursuant to Penal Code, section 995. The motions were granted as to certain defendants and particular counts, and the indictment was dismissed as to one defendant. Appellant Caruso's motion was denied as to all 19 counts, and on June 21, 1957, each defendant pleaded not guilty to each count in which he was charged and trial was set for October 1, 1957.

Meanwhile, on June 5, 1957, the grand jury again indicted appellants Henry J. Caruso, Stratford, and 16 other defendants on 15 counts of grand theft. On June 19, 1957, the defendants under this second indictment were arraigned. On July 10, 1957, each of the defendants moved to set aside the indictment, and hearing on the motions was continued to October 1, 1957.

The record reveals that on August 30, 1957, appellant Caruso was represented by Attorneys Blase Bonpane and Cecil Collins. Andrews was represented by Attorney Ward Sullivan. Cauthen was represented by Attorney Gordon B. Friesen. Macura and Schraier were represented by Attorney Jack B. Tenney. [Stratford's affidavit does not indicate by whom he was represented on that date, but he had not yet been required to plead to the June 5, 1957, indictment.] On August 30, 1957, on appellant Caruso's motion, Attorney Fred N. Howser was associated as Caruso's counsel, and on defendants' motion the trial was continued to October 21, 1957.

On October 1, 1957, the date previously set for hearing on the motions to dismiss the June 5 indictment, Caruso appeared in the trial court with Attorney Collins. The other appellants were present and on motion of all the defendants the hearing of the motions to dismiss the indictment was advanced to October 1st. The motions to dismiss under Penal Code, section 995, were withdrawn and the six appellants herein pleaded guilty to certain of the counts with which they were charged.

Caruso withdrew his prior plea of not guilty and pleaded guilty to two counts (forgery and grand theft) of the April 25 indictment and two counts (grand theft and forgery) of the June 5 indictment. Stratford pleaded guilty to one count of the June 5 indictment (grand theft). Each of the other appellants pleaded guilty to one of the counts with which he

was charged: Cauthen (grand theft), Schraier (grand theft), Macura (forgery), and Andrews (grand theft).

A number of the indicted defendants (other than appellants) elected to stand trial on their pleas of not guilty, stipulating that their causes might be submitted on the transcript of the grand jury proceedings, but reserving the right to offer additional evidence. The trial of these defendants was continued to October 21, 1957. On that date trial was commenced and proceeded intermittently from October 21st to November 18th.

On November 15, 1957, appellant Schraier moved to withdraw his plea of guilty and on November 18th, his motion was denied. The trial of the defendants who had pleaded not guilty was proceeding apace, and on November 20, 1957, certain of the defendants under the two indictments were found not guilty on certain of the counts with which they were charged. During the course of the trial of the defendants who had pleaded not guilty, the trial judge commented regarding the apparent unreliability of certain witnesses for the prosecution and the consequent weakness of the case as against certain of the defendants. These comments need not be here repeated, nor need they be further discussed other than to point out that they had absolutely nothing to do with the charges to which appellants had pleaded guilty and had no reference to any of the complaining witnesses involved therein. They related only to the cases which were then on trial before the judge.

On December 6, 1957, Caruso filed a notice of motion for change of plea which was denied on December 16, 1957. On January 8, 1958, Caruso filed a second notice of motion for change of plea. On January 16, 1958, Schraier's second motion to withdraw his plea was denied. On January 17, 1958, Stratford filed notice of motion to withdraw his plea of guilty. On January 22, 1958, the other appellants, Cauthen, Andrews and Macura also moved to withdraw their pleas of guilty. Finally, on January 23, 1958, all the then pending motions to withdraw the pleas were denied, and judgments of conviction were entered as to the six appellants on the charges to which they had pleaded guilty on October 1, 1957.

Caruso was given a suspended sentence. Probation was granted for a period of 10 years conditioned on his spending the first year in the county jail, paying a fine of $10,000 and remaining "out of the automobile business or any business involving sales to the public." The other appellants were

also granted probation on similar conditions. Stratford was granted probation for five years conditioned on his spending the first six months in the county jail, paying a fine of $1,000, and that he "get out and stay out of the automobile business."

■ "The plea of guilty constitutes an admission of every element entering into the offense charged, and constitutes a conclusive admission of defendant's guilt." (*People* v. *Outcault*, 90 Cal.App.2d 25, 29 [202 P.2d 602] ; *People* v. *Burkett*, 118 Cal.App.2d 204, 207 [257 P.2d 745].) ■ A plea of guilty is an act charged with the most serious legal consequences; it is tantamount to a judgment of conviction. (*People* v. *Jones*, 52 Cal.2d 636, 651 [343 P.2d 577] ; *People* v. *Hickman*, 204 Cal. 470, 476 [268 P. 909, 270 P. 1117] ; see 14 Cal.Jur.2d 493, § 247.) ■ However, the law seeks no unfair advantage over the defendant (*People* v. *Schwarz*, 201 Cal. 309, 315 [267 P. 71] ; *People* v. *Miller*, 114 Cal. 10, 16 [45 P. 986]) and although the code specifies that the withdrawal of a plea of guilty may be permitted before judgment (Pen. Code, § 1018) the court has the power to permit such withdrawal and the substitution of a not guilty plea after judgment has been pronounced. (*People* v. *Campos*, 3 Cal.2d 15 [43 P.2d 274] ; see 14 Cal.Jur.2d 508, § 259.)

Although in a few states statutes confer an absolute right on the defendant to withdraw a plea of guilty at any time before judgment (see 22 C.J.S. 645, § 421(3) ; 16 C.J. 397, § 730), in California, as in most states, the applicable statute (Pen. Code, § 1018) provides that in the case of a defendant represented by counsel the court may for good cause shown, permit the plea of guilty to be withdrawn. The statute further provides that it is to be liberally construed to promote justice.* (*People* v. *Singh*, 156 Cal.App.2d 363, 366 [319 P.2d 697] ; see *People* v. *Francis*, 42 Cal.2d 335, 338 [267 P.2d 8].) Such a motion is addressed to the sound discretion of the trial judge.

■ As stated in *People* v. *Ottcnstror*, 127 Cal.App.2d 104,

---

*Penal Code, section 1018: "Unless otherwise provided by law every plea must be put in by the defendant himself in open court. No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall any plea of guilty of any other felony be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish

109 [273 P.2d 289] : "It is well settled in our law that an accused who seeks to set aside a plea of guilty must show good cause therefor, and the granting or denial of such an application rests in the sound discretion of the trial judge, and his decision will not be disturbed on appeal unless an abuse of that discretion is clearly shown. (*People* v. *Broady,* 120 Cal.App.2d 901, 903 [262 P.2d 669], and cases therein cited.) ■ As was said in *People* v. *Cooper,* 123 Cal.App.2d 353, 356 [266 P.2d 566] : "While a plea of guilty may be withdrawn pursuant to Penal Code section 1018 by reason of the mistake, ignorance, inadvertence or any factor that overcame the defendant's exercise of a free judgment, the basis of the motion for relief "must be established by clear and convincing evidence.'" ' "

In *People* v. *Griffin,* 100 Cal.App.2d 546, 548 [224 P.2d 47], it is stated that " [w]hile a plea of guilty may be withdrawn for mistake, ignorance, inadvertence or for any other factor overreaching a defendant's free and clear judgment, the fact of such mistake, fraud, duress or overreaching must be established by clear and convincing evidence, and an appellate court may conclude that the motion was properly denied where the defendant acted with knowledge of the facts and on advice of his counsel. (*People* v. *Butler,* 70 Cal.App.2d 553, 561 [161 P.2d 401] ; *In re Hough,* 24 Cal.2d 522, 531 ff. [150 P.2d 448] ; *People* v. *Gottlieb,* 25 Cal.App.2d 411, 415 [77 P.2d 489].)"

■ "A motion to withdraw a plea of guilty, pursuant to the provisions of section 1018 of the Penal Code, is addressed to the sound discretion of the trial court, and in considering such a motion the doctrines of 'presumptive innocence' and 'proof beyond a reasonable doubt' are inapplicable, since defendant has already admitted his guilt by his plea of guilty. This was the question before the trial court: Was the plea of guilty entered because of (a) duress, (b) fraud, (c) other forces overreaching the free will of defendant, or (d) was there a strong and convincing showing that defendant has been deprived of any legal right by an extrinsic cause?" (*People*

to be represented by counsel. On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea the court must, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.

"Upon indictment or information against a corporation a plea of guilty may be put in by counsel.

"This section shall be liberally construed to effect these objects and to promote justice."

v. *Outcault,* 90 Cal.App.2d 25, 29-30 [202 P.2d 602] ; see also *People* v. *Snowden,* 149 Cal.App.2d 552 [308 P.2d 815] ; *People* v. *Alexander,* 130 Cal.App.2d 529 [279 P.2d 128].)

In the cases at bar, each appellant contends that the trial court abused its discretion in denying his motion to withdraw his plea of guilty and substitute therefor a plea of not guilty. Notwithstanding the common background of the proceedings in the court below, we shall discuss the contentions of each appellant separately since there are substantial differences in the facts which each appellant contends establishes an abuse of discretion in his case.

### CARUSO

Appellant Caruso's position is that ''he entered his pleas of guilty as a result of factors overreaching his free will and judgment.'' From the affidavits submitted to the trial court and from certain additional material presented in his briefs, Caruso's position may be most favorably stated as follows:

Caruso, who had been represented by Attorneys Blase A. Bonpane and Cecil Collins from the inception of the proceedings, retained Attorney Fred N. Howser as additional counsel with a contingent fee arrangement for the payment of an additional sum of $50,000 provided that Caruso was granted probation and did not receive a jail sentence. Howser was associated as counsel of record on August 30, 1957. Thereafter, on September 25, 1957, Howser, without Attorney Bonpane's knowledge, initiated a series of conferences with the district attorney's office with regard to Caruso's pleading guilty. These negotiations continued until October 1, 1957, when Caruso entered the pleas on which rests the judgment of conviction presently under review.

Attorney Bonpane, denominated ''Chief Counsel'' for Caruso, was a delegate to the State Bar Convention held in Monterey, California, and he left Los Angeles on September 28, 1957. Bonpane did not participate in the conferences which culminated in the guilty pleas, and he averred that he was not consulted by Howser, and had no knowledge of the proposal for his client to plead guilty until he read of the plea on October 2, 1957. It is Caruso's contention that Howser advised and induced him to plead guilty without any adequate knowledge of the facts of the case.

During the oral argument on the motion to withdraw the

plea of guilty, Howser stated that he had advised his client to plead guilty without having read the grand jury transcripts and in reliance on representations of the deputy district attorney as to the strength of the People's case. Howser indicated that after he had examined the transcript of the grand jury proceedings and heard the People's case as to the other defendants, he concluded Caruso should withdraw his plea of guilty.

Caruso himself averred that his pleas of guilty were entered when he was in a state of mental distress, including fear, anxiety, and other emotional factors which prevented him from exercising calm, deliberate, and intelligent judgment. He contends that at all times he asserted his innocence, and that his plea was entered under the inducement of Howser.

Caruso does not contend that his plea of guilty was the result of duress or fraud. (See *People* v. *Outcault, supra,* 90 Cal.App.2d 25, 30.) His contentions with respect to his mental state and his reliance on the importuning of an allegedly unprepared attorney involved factual questions for the trial court to resolve. (*People* v. *Ottenstror,* 127 Cal.App. 2d 104, 109 [273 P.2d 289] ; *People* v. *Griffin,* 100 Cal.App.2d 546, 548 [224 P.2d 47].) The trial court was not bound to accept and give credence to the affidavits submitted in support of the motion. (*People* v. *Knight,* 106 Cal.App.2d 312, 315 [234 P.2d 992].) As stated in *People* v. *Kirk,* 98 Cal.App.2d 687, at page 692 [220 P.2d 976] : "A trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence contradicting it, and this rule applies to an affidavit. Further, the trial court as trier of the fact, is the judge of the credibility of the witness whether he testify in person or by affidavit. (*Lohman* v. *Lohman,* 29 Cal.2d 144 [173 P.2d 657] ; *Berg* v. *Journeymen's Plumbers & Gas Fitters Union,* 5 Cal.App.2d 582 [42 P.2d 1091].)''

Appellant relies on *People* v. *Campos,* 3 Cal.2d 15 [43 P.2d 274], as authority for the proposition that in the absence of affidavits to the contrary the trial court must accept the averments of defendant's affidavits, but that case is wholly inapplicable to the circumstances of the case at bar. In that case the defendant had pleaded guilty to first degree murder and was sentenced to hang. He thereafter moved to vacate the judgment and withdraw the plea. The defendant averred that his plea was entered on the representations of the district

attorney to his counsel that he would not receive the death penalty. Notwithstanding the direct averments of the defendant as to statements by the district attorney, the People failed to file any affidavits in opposition to the motion, and on that basis the Supreme Court reversed an order denying the motion to vacate the judgment. That situation is quite different from the case at bar. Caruso does not contend that he was misled by statements of the district attorney. His affidavits deal with matters which were peculiarly and only within his own knowledge and that of his counsel and could not be controverted by affidavits submitted by the People.

Caruso lays great emphasis on the mental and emotional strain that he was under at the time he pleaded guilty as one factor supporting his contention that the guilty plea was not a product of his free will and judgment. But this is not a case of a simple, unlettered defendant overwhelmed by the complex abstractions of the law who has but a few minutes to consult with his attorney before he was forced to plead. (See *People* v. *Young,* 138 Cal.App.2d 425 [291 P.2d 980] ; *People* v. *McGarvy,* 61 Cal.App.2d 557 [142 P.2d 92].) Caruso was a highly successful business man and corporate executive well skilled in the art of negotiation. Caruso had a college education and he had employed other skilled lawyers, Bonpane and Collins, to assist him. One of the two, Attorney Collins, was present at one of the conferences anteceding the pleas and also appeared with Caruso on October 1 when he entered his pleas of guilty. At the time he pleaded guilty Caruso was advised specifically of the offense set forth in each count to which he pleaded guilty. To each count Caruso pleaded guilty with the statement that the plea was on or under "the advice of counsel." The circumstances revealed by the record are wholly inconsistent with the claim that the plea was not the product of Caruso's free will and judgment. The question whether Caruso's plea was a product of overreaching was a question for the trial court to resolve. (See *People* v. *Griffin, supra,* 100 Cal.App.2d 546 ; *People* v. *Burkett, supra,* 118 Cal.App.2d 204 ; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337 [244 P.2d 750] ; *People* v. *Snowden, supra,* 149 Cal.App.2d 552.)

"Mere advice and persuasion or the expression of matters of opinion by his own attorney will not suffice to vitiate the plea. Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice. The private attorney is selected by the party and is his agent.

But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given." (*People* v. *Gilbert*, 25 Cal.2d 422, 443 [154 P.2d 657] ; see also *People* v. *Butler*, 70 Cal.App. 2d 553, 562 [161 P.2d 401] ; *People* v. *Martinez*, 88 Cal.App.2d 767, 772-773 [199 P.2d 375].)

 Utterly without merit is Caruso's argument that his pleas of guilty "on the advice of counsel" should be regarded as *"qualified"* confessions of guilt. Although he answered in the affirmative when asked if he was entering his pleas of guilty because he was actually guilty of the offenses and if he was doing so freely and voluntarily, he now urges that the statement "I plead guilty on the advice of counsel" indicated that he was not actually acknowledging guilt but was reluctantly yielding to the influence of his own counsel.

There is nothing unusual about a defendant's pleading guilty on the advice of counsel and so advising the court. It strikes us as quite absurd to suggest that a plea of guilty entered *pursuant* to the advice of counsel should be regarded as less valid than one entered *without* legal advice. The obvious truth is that the judge taking the plea was entitled to construe the reference to counsel's advice as an affirmation that Caruso's counsel had advised him as to the applicable law, the elements of the offenses with which he was charged and the nature and quantum of the evidence which the prosecution would be required to produce in order to prove his guilt to a judge or a jury. Any other construction would have involved the unwarranted assumption that lawyers Bonpane and Collins, not to mention Howser, had been derelict in the performance of their most obvious duties to their client.

This entire contention, moreover, is rested upon factual assumptions which the trial judge was more than justified in refusing to accept. Caruso's assertion that he relied entirely and exclusively upon Howser's advice could have been viewed with justifiable skepticism in view of the fact that Attorney Collins was standing at Caruso's side when the pleas of guilty were taken. It appears from the record that Collins represented Caruso from the inception of the proceedings, appeared

with and for him on numerous occasions, including appearances on motions to dismiss the indictments. The trial judge was entitled to believe that Attorney Collins had become quite familiar with the nature of the charges and with the law and the facts relating thereto.

Any assertion by Caruso that he had not thoroughly canvassed all facets of his case with his several lawyers during the months which intervened between the return of the indictments and the entry of the pleas of guilty would have sufficed, we think, to arouse the skepticism of the most credulous judge.

 Furthermore, the assertion that Attorney Howser had not read the grand jury transcript and was wholly ignorant of the facts of the case is not supported in the record by any competent evidence. It could be regarded as significant that Howser's affidavit filed in support of the motion for change of plea contained no allegation to this effect. The only indication in the evidence that Howser had not familiarized himself with the facts is the averment in Caruso's affidavit that: ''After pleading guilty upon the advice of Mr. Howser, I learned for the first time that he had not read the transcripts nor studied the mass of records, but that he had relied upon the statements made to him about my case by his former deputies in the District Attorney's office, in whom he reposed great faith, who told him they had more than enough evidence to convict the 17 defendants in the case.'' Such statement of what the affiant had ''learned'' is obviously hearsay (*Estate of Dolbeer*, 149 Cal. 227, 247 [86 P. 695, 9 Ann.Cas. 795]), and entitled to little, if any, weight for any purpose. (See *Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628, 631 [204 P.2d 37]; *Kellett* v. *Kellett*, 2 Cal.2d 45, 48 [39 P.2d 203]; *Pratt* v. *Robert S. Odell & Co.*, 63 Cal.App.2d 78, 82 [146 P.2d 504]; *Enter* v. *Crutcher*, 159 Cal.App.2d Supp. 841, 845-846 [323 P.2d 586].) This is particularly true when the source of information is readily available, or if an affidavit of a person having personal knowledge can readily be obtained. (*People* v. *Shuler*, 28 Cal. 490, 495; *Higgins* v. *City of San Diego*, 126 Cal. 303, 314 [58 P. 700, 59 P. 209]; *Arnold* v. *Skaggs*, 35 Cal. 684, 688; *Slemons* v. *Paterson*, 14 Cal.2d 612, 616 [96 P.2d 125].)

Since Howser's affidavit was silent on this point, the trial judge was not required to give credence to his unsworn and self-stultifying statements, made in the course of argument, to the effect that counsel had advised his client in ignorance

and in naive and childlike reliance upon the prosecutor's purported declaration of an opinion that "they had this man dead bang and that they would murder him if he went to trial." (See *Moore* v. *Thompson*, 138 Cal. 23, 26 [70 P. 930].)

In one of his affidavits Caruso stated, "I was guaranteed by my attorney that if I plead guilty I would be granted probation, a misdemeanor sentence and a possible fine." The record indicates that the trial judge disbelieved this averment. Certainly the judge was not bound to believe that an attorney at law had guaranteed something that in the nature of things could not honestly and justifiably have been guaranteed. But even if the trial judge had believed that Howser had in fact represented to Caruso that a "deal" had been arranged with the district attorney and the judge, Caruso would not have been entitled on the basis of such representation to change his plea. There was no evidence that any responsible official had given the slightest semblance of corroboration to this false and unwarranted representation. (*People* v. *Gilbert*, 25 Cal.2d 422, 443 [154 P.2d 657]; *People* v. *Jones, supra*, 52 Cal.2d 636, 650-651.)

It would unduly and unnecessarily extend this opinion to discuss in detail Caruso's arguments in support of his contention that he has a good defense to each of the counts to which he pleaded guilty. Suffice it to say that these arguments are completely unconvincing. We are unimpressed with the minor discrepancies between the testimonies of the complaining witnesses and certain extrajudicial statements which they signed at the instance of persons who, at least inferably, were Caruso's agents. As a matter of fact most of these extrajudicial statements were contained in instruments releasing Caruso from civil liability in consideration of very substantial monetary payments. The record contains evidence which would support inferences that efforts were made on behalf of Caruso to reimburse certain of the prosecuting witnesses and to induce them to sign untrue exculpatory statements.

Efforts to reimburse a prosecuting witness (*People* v. *Moore*, 70 Cal.App.2d 158, 163 [160 P.2d 857]), or to manufacture evidence in his favor (*People* v. *Burke*, 18 Cal.App. 72, 91-92 [122 P. 435]), indicate a consciousness of guilt on the part of a defendant, and evidence thereof is admissible against him as proof of his guilt. And while generally evidence as to the conduct of third persons in attempting to reimburse a prosecuting witness or to manufacture evidence is inadmissible against a defendant where such conduct did not occur

in his presence, if it is shown by the evidence, direct or circumstantial, that the defendant authorized the conduct of such third persons in attempting to manufacture evidence or suppress testimony, the evidence of such conduct is admissible against the defendant. (*People* v. *Moore,* 70 Cal.App.2d 158, 163 [160 P.2d 857]; *People* v. *Burke,* 18 Cal.App. 72, 92 [122 P. 435]; *People* v. *White,* 47 Cal.App. 400, 401 [190 P. 821].)

In the exercise of its discretion the trial court may consider the defendant's delay in making an application to change a plea. In *People* v. *Francis,* 42 Cal.2d 335, 337-338 [267 P.2d 8], the defendant was charged by information with two counts of knowingly issuing a check with insufficient funds. Defendant pleaded not guilty on April 25, 1952, and trial was set for June 19, 1952. On June 3 defendant substituted attorneys, and the new counsel obtained a continuance to July 30, when the defendant, with counsel present, pleaded guilty to one count of the information and applied for probation, hearing on which was set for September 12. The probation officer's report, recommending denial of probation, was filed September 11. At defendant's request the date set for hearing was continued until October 10, 1952, when the defendant with his counsel moved to withdraw his plea of not guilty to one count. The motion was denied, and on appeal the Supreme Court affirmed the judgment of conviction. The court said: "The basis of the refusal was that defendant was delinquent in making his application to change his plea; that he had full opportunity to make it some time before it was made and he offered no justifiable excuse for the delay. . . . [W]e cannot say that the court abused its discretion in denying the motion."

If "considerable time" has elapsed between the guilty plea and the motion to withdraw the plea, the burden is on the defendant to explain and justify the delay. (*People* v. *Francis, supra,* 42 Cal.2d 335, 338; see *People* v. *Singh,* 156 Cal.App.2d 363 [319 P.2d 697] (one month); *People* v. *Burkett, supra,* 118 Cal.App.2d 204 (three weeks).) The motion to withdraw the plea may be motivated by the defendant's knowledge (*cf. People* v. *Griggs,* 17 Cal.2d 621 [110 P.2d 1031]); or well founded belief (*cf. People* v. *Van Valkenburg,* 111 Cal. App.2d 337, 342 [244 P.2d 750]; *People* v. *Francis, supra,* 42 Cal.2d 335; *People* v. *Outcault, supra,* 90 Cal.App.2d 25, 29) that the sentence he will receive will be substantially more

onerous than that he anticipated at the time he entered the plea of guilty. The fact that the defendant is disappointed in the sentence he received following a plea of guilty presents no ground for the exercise of the judicial discretion to permit the plea of guilty to be withdrawn. (*Cf. People* v. *Dabner,* 153 Cal. 398 [95 P. 880]; *People* v. *Manriquez,* 188 Cal. 602 [206 P. 63, 20 A.L.R. 1441]; *People* v. *Aseltine,* 139 Cal.App. 768, 770-771 [34 P.2d 830].) A defendant charged with an offense cannot be permitted to gamble on the anticipated result of a plea of guilty and when disappointed in the outcome reestablish a right to trial. (*People* v. *Northcutt,* 38 Cal.App.2d 258, 259 [100 P.2d 1094]; *People* v. *Bechtel,* 124 Cal.App.2d 659, 660 [268 P.2d 1072].) Nor is the fact that after plea but before sentence the defendant has become apprehensive regarding the anticipated sentence sufficient to compel the exercise of judicial discretion so as to permit the plea of guilty to be withdrawn. (*Cf. People* v. *Francis, supra,* 42 Cal.2d 335.) Nor may the defendant enter a plea of guilty confident that if by some fortuitous circumstance his chances of an acquittal are substantially improved, he may thereafter withdraw his guilty plea as of right. (*Cf. People* v. *Gilbert,* 25 Cal.2d 422, 442 [154 P.2d 657].)

 In the case at bar, Caruso has wholly failed to explain the entry of his plea and the belated motion to withdraw it. If the plea was truly the product of a complex of factors by which his free will and judgment was overreached, he had ample opportunity to promptly make those facts known to the trial court. Attorney Bonpane learned of the plea the day following, and although Bonpane averred he was "astounded," Attorney Collins was present at one of the conferences at which the guilty plea was proposed, and as we have pointed out, he appeared with Caruso in open court when Caruso pleaded guilty to the four counts.

If Caruso's plea was not the product of his free will, it is inconceivable that experienced counsel would wait over two months to advise Caruso to withdraw his plea. Had the motion to withdraw the plea been successful, the prior plea of guilty would have been admissible against Caruso at a trial on the merits. (*People* v. *Boyd,* 67 Cal.App. 292, 302 [227 P. 783]; *cf. People* v. *Cooper,* 81 Cal.App.2d 110, 117 [183 P.2d 67]; see Witkin, Evidence, 253 § 225.) Experienced counsel would know that any delay in moving to withdraw the plea would bear adversely on the credibility of any explanation of the plea which the defendant might offer.

Instead, Caruso waited for more than two months before he moved to withdraw his plea. Meanwhile in the latter part of November certain of Caruso's codefendants who had elected to plead not guilty had been acquitted on certain of the counts with which they were charged. In the circumstances the trial court could reasonably conclude that the concept of "over-reaching" was an afterthought or recent contrivance evolved to meet Caruso's needs when he wished to have a trial on the merits—that Caruso decided that his plea of guilty was not the product of his free will and understanding only after intervening developments caused him to believe that he might successfully defend the action. (See *People* v. *Van Valkenburg, supra,* 111 Cal.App.2d 337, 342.) The trial court did not abuse its discretion in denying Caruso's motion to change his plea; hence, the judgment as to him must be affirmed.

## SCHRAIER

The affidavit of Schraier filed in support of his first motion to withdraw his plea of guilty states that when the indictments were handed down he was supplied legal counsel by his employer, the H. J. Caruso Company, Inc., and that he had relied upon the advice furnished him by said counsel; that he had subsequently consulted counsel of his own choosing, who advised him that he had a good defense to all of the charges and that perhaps his position was in some respects opposed to that of his fellow defendants; that he pleaded guilty following a meeting with an attorney who was acting as general counsel for the principal Caruso defendants; that it was explained there that he would have no chance to prove himself innocent and that it would be better for all concerned for him to plead guilty; that he believed, at the time of making the affidavit, that this representation was untrue; that he was not guilty of any of the acts charged, and that his actions up to the time of making the affidavit had been taken upon the advice of counsel supplied for him and not of his own choosing.

After denial of his motion to withdraw his plea based upon this affidavit, Schraier filed another affidavit which, in addition to the assertions set forth in the first one, alleged that his plea of guilty was entered because of representations made by his counsel to the effect that he would have no chance to be found innocent, and that his plea was made upon that mistaken advice.

On the basis of his affidavits, Schraier contends it to be conclusively established: that his plea was the product of poor advice; that he justifiably relied upon his attorney's statement that a deal had been arranged whereby his plea of guilty would lead only to a light sentence which would involve no jail sentence nor loss of his right to stay in the automobile business; that he was persuaded to plead guilty only because he felt that the atmosphere was "too prejudicial to allow him a fair trial"; that he could not afford the expense of the long trial that was anticipated; that he at no time consulted with his attorney on an individual basis as to his particular case, but was told by the attorney that he would have no chance to prove himself innocent and that it would be better for all concerned for him to plead guilty; and that he had good defenses to the charges and was not guilty of them.

In this case, as in the Caruso case, appellant's arguments proceed upon factual assumptions which the trial judge was abundantly justified in rejecting. As we have previously pointed out, a defendant's reliance upon his attorney's assurance that his plea of guilty will lead to a lenient sentence will not entitle him to withdraw his plea in the absence of actual or apparent corroboration by some responsible state officer. (*People* v. *Jones,* 52 Cal.2d 636, 650-651 [343 P.2d 577]; *People* v. *Gilbert, supra,* 25 Cal.2d 422, 442.) No such corroboration has been shown in this case.

The asserted fact that this appellant was persuaded to plead guilty because his counsel regarded the prevailing "atmosphere" as unfavorable to the defense and because appellant could ill afford the expense of standing trial affords no basis for the claim that he was entitled as a matter of right to withdraw his plea. It does not appear that any motion for change of venue was made. The cost of defending against criminal charges commonly involves financial hardship. All of this appellant's other arguments are answered in our discussion of the Caruso case, *supra.*

## ANDREWS

Andrews' affidavit in support of his motion to withdraw his plea of guilty asserted that at the time he entered his plea of guilty he was represented by Attorney Ward Sullivan, who was retained and paid by Caruso, and that Andrews did not retain and pay for counsel of his own choosing; that at no time prior to entering the plea of guilty was he consulted for the purpose of preparing for trial; that he was not familiar

with criminal procedure; that he was asked to appear at the office of Mr. Collins, one of the attorneys for Caruso, at 7 a. m. in October; that at 7:30 a. m. he went to that office, where his codefendants and various attorneys were present; that he was told that the State wanted them all to plead guilty, and those that didn't could submit their cases on the transcript; that he was told that if he pleaded guilty the sentence would probably end up as a misdemeanor sentence and he could avoid a lot of bad publicity and get probation; and that pleading guilty to one count was like getting a slap on the wrist, and that he thereupon pleaded guilty. Andrews alleged that he subsequently retained counsel of his own and was advised and believed that not only was he innocent of the crime to which he pleaded guilty, but that he was not guilty of any charge set forth in the indictment; that when he was asked if he entered his plea of guilty because in truth and fact he was guilty and he answered ''yes,'' and when he was asked if he had received any promises if he pleaded guilty and he answered in the negative, he was numb and mentally disturbed by reason of the fact that he was entering a plea of guilty and his answers were wrong and were made through inadvertence, ignorance and mistake; and that he was innocent and wanted to withdraw his plea of guilty, enter a plea of not guilty, and have the matter set for trial so that he could prove his innocence.

Andrews cites *People* v. *Young,* 138 Cal.App.2d 425 [291 P.2d 980], in support of his contention that the trial court was guilty of an abuse of discretion in denying his motion to withdraw the plea of guilty. In that case the defendant was charged by information with five felony counts, and he was arraigned and pleaded not guilty on March 25, 1955. Various continuances were had until June 23, 1955, at which time the defendant appeared with counsel and pleaded guilty to certain counts and the matter was referred to the probation department for hearing on July 14. Thereafter, on July 12, defendant appeared in court, represented by another attorney and moved to withdraw his plea of guilty. In support of his motion defendant averred that he ''was unduly influenced by the attorney and as recited in appellant's brief, 'the defendant was informed by his attorney immediately preceding the time for trial to commence that said attorney was ill prepared to proceed with the trial due to the fact that ''said attorney had not been paid sufficient sums to properly prepare for said

trial and that said attorney would have to try said case 'from the seat of my pants.' '' ' '' Division One of this court reversed the judgment of conviction with the observation that ''. . . the record clearly presents a situation which, under the well-established law on the subject, entitled appellant to the relief sought.''

*People* v. *Young, supra,* is readily distinguishable from the situation presented in Andrews' appeal. In that case the attorney prevailed upon the defendant to plead guilty immediately preceding the time for trial. The defendant in that case was faced with the immediate necessity of going to trial with counsel who indicated that he was completely unprepared to represent him. In the case at bar trial was set for October 21, 1957, three weeks from the date on which Andrews elected to plead guilty.

The fact that nearly four months intervened between Andrews' plea of guilty and his motion to withdraw it belied his contentions that his confession of guilt was chargeable to mental disturbance, ignorance, mistake, or bad legal advice. At no time prior to making his motion to change his plea did he indicate any dissatisfaction with Attorney Sullivan, an attorney with much experience in the defense of criminal cases.

This appellant's arguments fall far short of casting any serious doubt upon the correctness of the trial court's ruling. The record affords ample support for the court's implied findings upon the essentially factual issues tendered by the motion. Further discussion of the effect of alleged assurances of counsel with respect to the leniency of the anticipated sentence would be superfluous.

### STRATFORD

 Stratford asserts that his plea of guilty was not free and voluntary because at a conference on October 1, 1957, at which he and his codefendants and their counsel were present, he was told that a package deal had been made with the district attorney's office in which all defendants would have to plead guilty or the case would go to trial against all defendants on all counts; that there was talking, argument, confusion, bewilderment and indecision among those present; that he had the impression from the conversations he overheard that if he did not plead guilty that morning, financial support for his defense would be withdrawn; that he did not have sufficient assets to support his family during a long trial which

would have prevented him from earning a living, and could not afford to engage counsel to defend himself during a long trial; that he was innocent of any wrongdoing and not guilty of the offense of grand theft to which he pleaded guilty.

It is obvious that the trial court was not guilty of an abuse of discretion in denying the motion to withdraw the plea. There is no assertion or showing that anything done by any officer of the state led to Stratford's misunderstanding as to the consequences of his plea. (*People* v. *Smith*, 120 Cal. App.2d 531, 535 [261 P.2d 306].) Moreover, Stratford's delay of three and one-half months in moving to withdraw his plea is totally unexplained. (*People* v. *Francis*, *supra*, 42 Cal.2d 335.)

The affidavits filed in support of Stratford's motion make no showing sufficient to produce in our minds any serious apprehension that there may have been a miscarriage of justice in this instance. The testimony of the complaining witnesses before the grand jury accused this appellant of reprehensible conduct constituting all the essential elements of the offense to which he pleaded guilty. His affidavits at best indicate only that he might be able to develop minor inconsistencies in the testimony of such witnesses which would not suffice to impair its substance.

Stratford also contends that the trial court was guilty of an abuse of discretion in granting probation on condition that Stratford remain out of the automobile business. Stratford claims that the automobile business is the only one which he knows, and the condition of probation violated the underlying purpose of the probation law. Appellant's contention may be summarily rejected. On the basis of the record before it, the trial court's condition was abundantly justified.

The terms of probation are discretionary and as our Supreme Court has recently stated: ''Probation is a privilege, .an act of grace or clemency,'' and if the conditions imposed appear to a defendant to be more onerous than he cares to accept, he has the right to refuse probation and to insist that sentence be pronounced. (*In re Osslo*, 51 Cal.2d 371, 377, 381 [334 P.2d 1].)

## MACURA

Macura's affidavits in support of his motion to withdraw the plea of guilty alleged in substance that because of economic pressure, inability to finance a long court trial, and on the advice of counsel, he pleaded guilty. These were all

questions of fact for the trial court to resolve. Macura has failed to establish a sufficient factual basis for his motion by the clear and convincing evidence required to establish an abuse of discretion. (*Cf. People* v. *Ottenstror*, 127 Cal.App.2d 104, 109 [273 P.2d 289] ; *People* v. *Griffin*, 100 Cal.App.2d 546 [224 P.2d 47].) Moreover, his delay of nearly four months in moving to withdraw the plea is totally unexplained. (*People* v. *Francis, supra*, 42 Cal.2d 335.)

Macura further argues on the basis of his affidavit that his free will was overcome and his judgment subverted because of his fear of the difficulties and costs of a mass trial and the effect of adverse publicity on the possibility of securing an unprejudiced jury. But this appellant was at all times represented by the able counsel who continues to represent him and it does not appear that he sought a separate trial or a change of the place of trial. Our earlier discussion of applicable principles of law fully disposes of all contentions advanced by this appellant.

### CAUTHEN

Appellant Cauthen's affidavits contain allegations to the general effect that he was induced to plead guilty by the pressure of influence exerted upon him by his codefendants; that his attorney had advised him to plead not guilty to all counts ; that he was confused and bewildered by the conflicting advice which he received from various persons, including other defendants and their attorneys, to the effect that if he went to trial it would last many months with a danger that a jury might find him guilty of a conspiracy involving many transactions; that he was led to believe that he would probably be dealt with more leniently if he pleaded guilty than if he stood trial; and that he, at all times, felt that he was not guilty of the offenses with which he was charged.

We shall not burden this opinion with a discussion of Cauthen's arguments relative to the sufficiency of the evidence to establish his guilt of the offenses charged. Suffice it to say that we find them unconvincing. It cannot be disputed that the evidence was sufficient to support the indictment. Thus, the short answer to these arguments is that Cauthen's plea of guilty "amounts to an admission of every element of the crime charged." (*People* v. *Jones, supra*, 52 Cal.2d 636, 651.)

The essence of Cauthen's position is that he pleaded guilty against the advice of his attorney after his codefendants had urged him so to do. However, he, at all times, was

represented by counsel of his own choice, and it would seem natural to suppose that learned counsel would have dispelled from his mind any idea that he could be found guilty of conspiracy without evidence of participation on his part. (See *People* v. *Lyon,* 135 Cal.App.2d 558, 573-575 [288 P.2d 57].) And if Cauthen was afraid that the trial might run for several months, and was so certain of the weakness of the case against him, one may wonder why he did not elect to stand on his plea of not guilty and submit his case on the transcript of the testimony before the grand jury with such additional evidence as he might have seen fit to offer. As we have noted, a number of his codefendants elected to follow this procedure.

### CONCLUSION

It is apparent, we think, that to a very large extent the same principles of law govern the cases of all six appellants. For that reason much that we have said in answer to the contentions of each appellant may be applied with equal force to the arguments advanced by each of the others. It would be wastefully repetitious to restate these obviously applicable and controlling principles in the disposition of each of the several cases. The conclusion is clear that none of the appellants has shown any abuse of discretion in any of the rulings presented for review.

Accordingly, each of the judgments of conviction is affirmed.

The several nugatory appeals from orders denying motions for leave to withdraw pleas of guilty and to substitute pleas of not guilty are dismissed.

The appeal of Andrews from the sentence is dismissed.

The orders granting probation have been deemed final judgments for the purposes of this appeal, and each of said orders here presented for review is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Petitions for a rehearing were denied November 17, 1959. Appellants' applications to the Supreme Court for leave to produce additional evidence were granted December 17, 1959, and their petitions for a hearing by the Supreme Court were denied. Draper, J., sat pro tempore in place of Justice White, who deemed himself disqualified. Schauer, J., and Peters, J., were of the opinion that the petitions should be granted.